Henry FRIEDMAN, Trustee in Bankruptcy of Herman Brightman, Plaintiff,

v.

Herman BRIGHTMAN, Frances Brightman, Shepard A. Brightman, Saul J. Brightman, Donald N. Brightman and Herman Brightman & Sons, Inc., Defendants.

Civ. A. No. 62–66.

United States District Court
D. Massachusetts.

June 1, 1964.

Morris Michelson, Boston, Mass., for plaintiff.

Joseph Grassia, Wasserman & Salter, Boston, Mass., for defendant.

CAFFREY, District Judge.

This is a civil action brought by Henry Friedman, Esq., trustee in bankruptcy of Herman Brightman, pursuant to the provisions of Section 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C.A. 110, sub. e (1), to set aside allegedly fraudulent conveyances made by the bankrupt, to obtain an accounting from the various defendants, and for other relief. The petition in bankruptcy was filed by Herman Brightman on October 17, 1960.

The case was tried to the Court and the parties have filed memoranda of law, requests for findings and for rulings of law. I find the following facts:

Plaintiff is the duly-appointed trustee in bankruptcy of the individual defendant Herman Brightman. Herman Brightman was engaged for about thirty years in the business of wool-processing, which he carried on in his individual capacity in the Roxbury section of Boston. By and large his business was profitable until about 1956 when it took a downturn and rapidly deteriorated thereafter.

Brightman testified that he lost $10,000 in 1956 and that he also operated at a loss in 1957 and 1958. At the end of 1957 his assets were approximately $46,-000 and his liabilities were somewhat in excess of $100,000. He was then unable to pay his debts as they matured and was insolvent. At about this time, Brightman discharged Herbert Hyson who had served as his accountant for twenty-five years. He did not inform Hyson that he

was about to incorporate and did not, in fact, pay Hyson in full for accounting services rendered up to that time. He did, however, while concealing the fact of incorporation from Hyson, promise Hyson that he would be paid his outstanding bill of $365.00.

In May 1958, Brightman formed a corporation, Herman Brightman & Sons, Inc., which continued to operate his former business at the same place and to all visible intents and purposes in exactly the same manner in which his individual operation had been carried on. In addition to maintaining the identical location and substantially the same business name, Herman Brightman admitted that the corporation took over the books of account that had been used by him as an individual and continued to use the same purchase journal, sales journal, etc. Although on direct examination he testified that he notified his individual business creditors of the fact of the incorporation, he subsequently admitted that only one business creditor was actually so notified.

A representative of the insurance agency which insured Brightman's machinery during the period 1956 through the spring of 1960 testified that his firm was never notified of the incorporation and that even after the incorporation the insurance policies were still maintained in the name of Brightman as an individual. Brightman promised his insurance man that a back debt for overdue insurance premiums would be paid when he carried out a contemplated sale of his machinery. This promise was not fulfilled and a $2,000 obligation for insurance premiums is scheduled in Brightman's bankruptcy petition.

The corporation was organized by one Sumner Fox, Esq., identified as a friend of Brightman's son, Shepard Brightman. At the time the corporation was formed Shepard was 26 years old and his brother Saul was 24 years old. Shepard had started to work in his father's business in 1953 or 1954 and Saul had begun to work in his father's business in 1956 or 1957. The new corporation issued 700 shares of no par stock, 400 shares to Shepard, 200 to Saul and 100 to the bankrupt. Upon its formation title to all of the machinery owned by the bankrupt as an individual was transferred to the corporation. This machinery was then his only disposable asset.

In July 1958 the bankrupt donated his 100 shares of common stock to his son Shepard. This gift of 100 shares left the bankrupt without any realizable assets whatsoever and with outstanding individual business debts of $66,963. While it is true that several parcels of real estate on George Street, Roxbury, stood in the name of the individual bankrupt at this time, they were so burdened with municipal liens that the individual bankrupt had no equity in them and they were in fact taken by the City of Boston and sold for unpaid taxes. This real estate had zero value for purposes of this case.

The transaction by which Herman Brightman transferred his machinery and equipment to the corporation increased the extent to which he was already insolvent by about $50,000. I do not believe the testimony of the members of the Brightman family about the alleged consideration for the transfer of this equipment. The transfer by Herman Brightman to the corporation was without consideration and was made for the purpose and with the intent of hindering, delaying and defrauding his creditors.

In May 1960, the Brightmans engaged an auctioneer, Aaron Krock of Worcester, to auction off the machinery and equipment previously donated by Herman Brightman to the corporation. At the auction sale these assets were liquidated for a gross amount of $50,934.50. After deducting auctioneer's commission, advertising expenses of $644.00, allowances in the amount of $145.00, and $8,055 paid by Krock to Herman Brightman & Sons, Inc. through two checks each dated May 10, 1960, Krock turned over to Sumner Fox, attorney for the corporation, a balance of $36,280.98.

Thereafter Fox, in a course of conduct indicative of either a flagrant disregard for or complete ignorance of his obliga-

tions as a member of the bar, deposited this entire amount in his own general clients' account and paid out various amounts as directed by Shepard, Saul or Herman Brightman. He paid Shepard Brightman $12,975 by check; he paid Saul Brightman $5,350 by check, and he paid to or for the benefit of Herman Brightman $6,335.19 by check. Fox testified that no creditors of Herman Brightman individually were paid by him from the net proceeds of the auction sale, and he said he paid creditors pursuant to directions given to him by either of the three Brightmans with money received from the liquidation of the ostensibly corporate assets without any idea on his part whether the persons to whom he made payment were creditors of the corporation or creditors of Herman Brightman individually. He also testified that as far as he knew, no creditor of Herman Brightman individually was notified of the incorporation and that he knew of no notice being sent to anyone. He said he knew that Herman Brightman had creditors but that when he formed the corporation he did not ask for a list of those creditors and that he did nothing about the question of the corporation assuming the liabilities of Herman Brightman individually. He said he was asked by the Brightmans if he would take the funds from the auctioneer and disburse them to a list of payees if they would supply such list, that he agreed to do so, and never investigated whom he was paying or why.

Fox also admitted on the witness stand that he knew that a transfer of the assets would hinder creditors of Herman Brightman if he had creditors, and in the course of his testimony he admitted that he knew Brightman had creditors. The performance of Mr. Fox in this case is summed up in his own words, "This is what I was asked to do and this is what I did." Serious questions of legal ethics are presented when a member of the bar uses such a low standard to guide his ac-

tions and, as he testified, elects to "just go along with anything the clients wanted me to do." [1]

Although asked by the trustee in bankruptcy in 1961 for the records of the corporation, Fox testified that in 1962 he destroyed many of the records of the corporation, allegedly as a routine destruction of "obsolete" records. This destruction of corporate records by Fox, coupled with an unfortunate but convenient flood in the basement of the Brightman home, results in the fact that the trustee in bankruptcy and the Court do not have the benefit of all relevant records in this matter.

At the trial Herman Brightman testified that his sons, Shepard and Saul, had made loans in varying amounts to him for use in his business prior to the incorporation thereof, and defendants contend that some of the disbursements made out of the proceeds of the auction by Fox to Shepard and Saul Brightman were in repayment of these alleged loans. In support of this claim Saul Brightman produced a group of ten checks written by him in 1956 and 1957 payable to Herman Brightman. All of these checks were endorsed with a rubber stamp, "Pay to the order of Second Bank-State St. Trust Company, Boston, Mass., Herman Brightman." Shepard Brightman also produced three promissory notes running from him to the Brookline Savings Bank evidencing so-called passbook loans made by the Brookline Savings Bank to him in 1954, 1956 and 1957, the proceeds of which he says were loaned to his father prior to the incorporation. Herbert Hyson, the former accountant for Herman Brightman, testified that he was never told by Herman, Shepard or Saul Brightman that any of these alleged loans were made and, more significantly, no entry reflecting any of these alleged loans appears in the accounts receivable book of Herman Brightman. It may well be not without significance that Sheet No. 102, the accounts payable sheet for the period

---

1. A copy of this opinion will be sent by the Clerk to the United States Attorney and to the Chairman of the Grievance Committee of the Boston Bar Association for such investigation as they deem appropriate.

after December 31, 1957, "happens" to be missing from the Herman Brightman General Ledger (Exh. 2).

It appears that Herman Brightman has come into this court and recited a fabricated story about these loans and that his sons have attempted to corroborate same. I do not find the testimony of the Brightmans believeable and much of it is inherently improbable. For example, Shepard Brightman testified that a check drawn by Fox on June 15, 1960 on the proceeds of the auction sale, and payable to him, which bears only his endorsement in blank, was in fact a check used to repay one Edward J. Connors, an alleged creditor of Herman Brightman. No endorsement of Connors appears on the check nor is there any notation in any way relating this check to Connors. This testimony is rendered still more incredible by the fact that the petition in bankruptcy signed by Herman Brightman and filed in this court on October 17, 1960 carries Edward Connors as a creditor in the amount of $2,500, the exact amount of the check under discussion.

There was other testimony from members of the Brightman family as to the alleged considerations for the amounts disbursed to them by Fox. I do not credit any of this self-serving testimony. I rule that the payments made by Fox to Herman, Shepard and Saul Brightman were distributions made without consideration to the members of the Brightman family from the proceeds of the assets which Herman Brightman had previously conveyed to the corporation for the purpose of hindering and defrauding his creditors.

With regard to the defendant Frances Brightman, I find that she is the wife of the defendant Herman Brightman. When the corporation was organized she was named as the Assistant Treasurer. She did not work at any time during their marriage, and the evidence indicated that the only assets she had consisted of what was given to her by her husband. On December 11, 1958, she and Herman Brightman purchased land and a house thereon at 8 Eastham Road, Newton. The defendant Herman Brightman obligated himself on the mortgage note to the extent of $20,000. He failed to disclose this obligation in his schedule in bankruptcy although he made oath that the schedule was a statement of all his debts to the best of his knowledge, information and belief. The down-payment on the house at 8 Eastham Road, Newton came in large measure from the proceeds of the sale of a house standing in the name of Frances Brightman, but the monthly payments on the $20,000 mortgage were made by Frances Brightman. I find that mortgage payments made by her after January 1, 1958 were made with funds which came to her as a gift from Herman Brightman at a time when he was insolvent, and although she is not shown to have been aware of her husband's insolvency, the payments made by her after January 1, 1958 were in fact made with funds of Herman Brightman given by him to her for this purpose in fraud of his creditors.

In conclusion I find and rule that there was both actual and constructive fraud on the part of the defendants Herman Brightman, Shepard Brightman and Saul Brightman.

The defendant Shepard Brightman has not accounted satisfactorily for the monies received by him out of the proceeds of the auction sale and owes the plaintiff the sum of $12,975, plus interest from December 5, 1960 at six per cent per annum.

The defendant Saul Brightman has not accounted satisfactorily for the money received by him out of the proceeds of the auction sale and owes the plaintiff the sum of $5,350, plus interest from January 4, 1961 at six per cent per annum.

The defendant Herman Brightman owes the plaintiff the sum of $6,335.19 plus interest from May 10, 1960 at six per cent per annum, plus the sum of $5,145.13 representing the amounts he advanced to Frances Brightman for mortgage payments in the years from 1959 to the date of the filing of the complaint.